1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9    SANDRA STRISSEL,

10                          Plaintiff,          CASE NO. C16-0374-RJB-MAT

11          v.

12   CAROLYN W. COLVIN, Acting               REPORT AND RECOMMENDATION
     Commissioner of Social Security,        RE: SOCIAL SECURITY DISABILITY
13                                           APPEAL

                            Defendant.
14

15          Plaintiff Sandra Strissel proceeds through counsel in her appeal of a final decision of the

16   Commissioner of the Social Security Administration (Commissioner).   The Commissioner

17   denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security

18   Income (SSI) after a hearing before an Administrative Law Judge (ALJ).  Having considered the

19   ALJ's decision, the administrative record (AR), and all memoranda of record, the Court

20   recommends this matter be REMANDED for further administrative proceedings.

21   / / /

22   / / /

23   / / /

REPORT AND RECOMMENDATION
PAGE - 1

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1959.[1]  She completed high school, attended less than a year of college, and previously worked as a sales representative (petroleum products), membership solicitor, receptionist, and animal caretaker.  (AR 38-39, 246.)

Plaintiff filed applications for DIB and SSI in January 2013, alleging disability beginning March 1, 2006. (AR 220-33.)  The applications were denied initially and on reconsideration.

On April 21, 2014, ALJ Larry Kennedy held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 47-82.)  At hearing, plaintiff amended her alleged onset date to June 19, 2009.  (AR 52-53.)  On July 29, 2014, the ALJ issued a decision finding plaintiff not disabled from the amended alleged onset date through the date of the decision.  (AR 22-40.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on January 29, 2016 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 2

plaintiff's palindromic rheumatism, lumbar spine degenerative disc disease, osteoarthritis, hypertension, migraines, gastro esophageal reflux disease, depression, anxiety, and pain disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform light work, but could only occasionally balance, stoop, kneel, and crouch, could not climb ladders/ropes/scaffolds/ramps/stairs or crawl, and should avoid concentrated exposure to extreme cold and vibration.  Plaintiff could perform simple, routine tasks and follow short, simple instructions, do work that needs little or no judgment, and perform simple duties that can be learned on the job in a brief period; has average ability to perform sustained work activities (manage attention, concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (eight hours a day, five days a week or equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence; needs an environment with minimal supervisor contact (not precluding all contact; meaning contact that does not occur regularly, and does not preclude simple and superficial exchanges or being in proximity to a supervisor); can work in proximity to a few co-workers, but not in a cooperative or team effort; needs an environment that requires no more than minimal interactions with a few coworkers and is predictable, with few work setting changes; and would not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work, although incidental contact of a superficial nature is not precluded. With that assessment, the ALJ found plaintiff unable to perform past relevant work.

REPORT AND RECOMMENDATION
PAGE - 3

1        If a claimant demonstrates an inability to perform past relevant work, or has no past

2  relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

3  retains the capacity to make an adjustment to work that exists in significant levels in the national

4  economy.  With the assistance of a VE, the ALJ found plaintiff capable of performing other jobs,

5  such as work as an electronic accessory assembler, small products assembler, and inspector/hand

6  packager.

7        This Court's review of the ALJ's decision is limited to whether the decision is in

8  accordance with the law and the findings supported by substantial evidence in the record as a

9  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792

10  F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is

11  unsupported by substantial evidence in the administrative record or is based on legal error.")

12  Substantial evidence means more than a scintilla, but less than a preponderance; it means such

13  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

14  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational

15  interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.

16  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

17        Plaintiff argues the ALJ committed two different errors associated with step five and

18  erred in the consideration of medical opinions.  She requests remand for a finding of disability as

19  of her 55th birthday and for a determination of disability prior to age 55.  The Commissioner

20  argues the ALJ's decision has the support of substantial evidence and should be affirmed.

21  <u>Age Category</u>

22        Age is considered as a vocational factor and categorized as follows:  "younger person"

23  (under age 50); "closely approaching advanced age" (age 50-54); and "advanced age" (age 55 or

REPORT AND RECOMMENDATION
PAGE - 4

older).  20 C.F.R. §§ 404.1563(e), 416.963(e).  The Commissioner's regulations state:

> We will not apply the age categories mechanically in a borderline situation.  If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

§§ 404.1563(b), 416.963(b).  *See also* Program Operations Manual System (POMS) DI 25015.006 at B ("We do not have a more precise programmatic definition for the phrase 'within a few days to a few months.' The term 'a few' is defined using its ordinary meaning, a small number. Usually, we consider a few days to a few months to mean a period not to exceed 6 months.'")[2]

A claimant of advanced age, limited to light work, and unable to perform past relevant work qualifies as disabled unless the ALJ finds she has skills that are readily transferable to a significant range of semi-skilled or skilled work within the individual's functional capacity.  20 C.F.R. pt. 404, subpt. P, app. 2 (the Medical-Vocational Guidelines or "grids") § 202.00(c); *Bray v. Comm'r*, 554 F.3d 1219, 1229 n.9 (9th Cir. 2009).  Plaintiff was less than five months from entering the advanced age category at the time of the ALJ's decision, and avers the ALJ erred by failing to consider whether she was on the borderline between age categories.

In a borderline situation, "an ALJ is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." *Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1071 (9th Cir. 2010) (emphasis in original).  Rather, the ALJ is

---

[2] "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1073 (9th Cir. 2010).  Agency interpretations are "entitled to respect," but only to the extent they have the "power to persuade."  *Id.* (internal quotation marks and quoted sources omitted).  *See also Warre v. Comm'r SSA*, 439 F.3d 1001, 1005 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority.")

REPORT AND RECOMMENDATION
PAGE - 5

1   required by regulation only to *consider* whether to use an older age category.  *Id.* at 1070.  An

2   ALJ may be found to satisfy this consideration requirement by, for example, mentioning the

3   claimant's date of birth and age category on the date of the ALJ's decision, citing the regulation

4   that prohibits application of the age categories mechanically in a borderline situation, *see* §§

5   404.1563, 416.963, and evaluating the overall impact of all the factors in the claimant's case in

6   reliance on the testimony of a VE.  *Id*. at 1071-72.[3]  There is no "obligation to make express

7   findings incorporated in the ALJ's opinion."  *Id*. at 1073.  *Accord Bowie v. Comm'r*, 539 F.3d

8   395, 399-401 (6th Cir. 2008) (as amended).

9        Plaintiff would have turned 55 in just over four months after the ALJ's decision.

10   Consistent with *Lockwood*, the ALJ noted Plaintiff's date of birth and cited to 20 C.F.R. §§

11   404.1563, 416.963.  (AR 39.)   The ALJ also relied on the VE's testimony in finding, with

12   consideration of plaintiff's age and all other relevant factors, there were other jobs she could

13   perform.  (AR 39-40.)  The VE identified those jobs after plaintiff testified as to her date of birth

14   and age, 54, at the time of the hearing (AR 53-54), and after the ALJ asked the VE to consider

15   plaintiff's age, among other factors, in identifying jobs she could perform (AR 75-76).

16        However, this case also differs from *Lockwood*.   The ALJ's decision indicates,

17   accurately, that plaintiff was 49, a "younger individual," on the June 19, 2009 amended alleged

18   disability onset date, but does not mention her age or age category at the time of the July 29,

19   2014 decision, some five years and almost two age categories later.  (AR 39.)   The ALJ also

---

[3] In *Lockwood*, 616 F.3d at 1071-72, the Ninth Circuit found that, in mentioning the claimant's date of birth and age:  "Clearly the ALJ was aware that Lockwood was just shy of her 55th birthday, at which point she would become a person of advanced age."  The citation to 20 C.F.R. § 404.1563 "shows that the ALJ knew she had discretion 'to use the older age category after evaluating the overall impact of all the factors of [Lockwood's] case.'"  *Id*. at 1072.  The Court was further satisfied the ALJ did not apply the age categories mechanically because the ALJ evaluated the overall impact of all factors when relying on the VE's testimony.  *Id*.

REPORT AND RECOMMENDATION
PAGE - 6

reflects his consideration of Rule 202.21, a grid rule addressing a "younger" individual. (*Id.*) There was no borderline age situation between the younger and closely approaching advanced age categories, given that, whether considered as a younger individual under Rule 202.21 or an individual closely approaching advanced age under Rule 202.14, the grids would have directed a finding of "not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2.

The regulations state that the Commissioner considers the "age categories that apply to you during the period for which we must determine if you are disabled." §§ 404.1563(b), 416.963(b). *See also Shumaker v. Astrue*, 657 F. Supp. 2d 1178, 1185 (D. Mon. 2009) ("The regulation directs the ALJ to consider Shumaker's age throughout the time period for which disability is sought, not just the alleged onset date.") The ALJ here considered plaintiff's claim as of the June 19, 2009 amended alleged disability onset date through the date of the July 29, 2014 decision. Plaintiff was eligible for DIB if she established her disability prior to her December 31, 2010 date last insured (AR 24), *see* §§ 404.131, 404.321, and to SSI benefits, payable the month following her January 17, 2013 application date, § 416.335, if she established disability prior to the date of the ALJ's decision.

There is some support for an inference the ALJ considered the borderline age situation presented in this case. *See generally Lockwood*, 616 F.3d at 1072 n.3 ("We presume that ALJs know the law and apply it in making their decisions.") However, the ALJ's depiction of plaintiff as a younger individual on the amended alleged disability onset date and her consideration of a grid rule under that age category undermines the support for a conclusion the ALJ considered using an advanced age category in the borderline situation presented in this case. The Court, for this reason, finds remand warranted.

The Court does not, however, find it proper to grant plaintiff's request for a finding of

REPORT AND RECOMMENDATION
PAGE - 7

disability as of her 55th birthday.  The Social Security Act allows for judicial review only of the agency's "final decision," which, in this case, is the ALJ's decision.  *See* 42 U.S.C. § 405(g); 20 C.F.R §§ 404.981, 416.1481.   The ALJ adjudicated the time period from June 19, 2009 through July 29, 2014.  (AR 40.)  Plaintiff's 55th birthday fell after the adjudicated time period, meaning no final decision has been rendered by the agency regarding that period.  The Court, as such, lacks jurisdiction to make the finding requested and recommends this matter be remanded for proper consideration of plaintiff's disability status in relation to all applicable age categories.

## Inconsistency between Jobs and RFC

The Dictionary of Occupational Titles (DOT) raises a rebuttable presumption as to job classification.  *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995).  Pursuant to Social Security Ruling (SSR) 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for the conflict is reasonable.  *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).   As stated by the Ninth Circuit:   "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."  *Johnson*, 60 F.3d at 1435-36 (VE testified about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work).  "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (citations omitted).

An ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted).   The court looks to "the record as a whole to determine whether the error alters the

REPORT AND RECOMMENDATION
PAGE - 8

outcome of the case." *Id*.  The failure to affirmatively ask regarding consistency with the DOT may be found harmless where, for example, there is no actual conflict with the DOT or where the VE provided "sufficient support for her conclusion so as to justify any potential conflicts[.]" *Massachi*, 486 F.3d at 1153-54 [n. 19] (finding, in that case, "an apparent conflict with no basis for the vocational expert's deviation."))

In this case, the RFC and VE hypothetical limited plaintiff to simple, routine tasks, following short, simple instructions, with work needing little or no judgment and performance of simple duties that can be learned on the job in a short time.  (AR 28, 75.)  Plaintiff notes the ALJ's failure to explicitly inquire into consistency of the VE's testimony with the DOT.  She maintains harm given that the three jobs identified by the VE require a "reasoning level" two or three, *see* DOT 729.384-010 (electronics accessory assembler; reasoning 3); DOT 739.687-030 (small products assembler; reasoning 2); DOT 559.687-074 (inspector/hand packager; reasoning 2), while the relevant RFC limitations are consistent only with reasoning level one jobs.

The DOT defines jobs requiring reasoning level one as requiring the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  DOT, App. C.  Reasoning level two jobs require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*.  Reasoning level three work requires that an individual:  "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations." *Id*.

In *Zavalin v. Colvin*, 778 F.3d 842, 846-48 (9th Cir. 2015), the Ninth Circuit found an

REPORT AND RECOMMENDATION
PAGE - 9

apparent conflict between an RFC limitation to simple, repetitive tasks and reasoning level three work. The ALJ failed to recognize the inconsistency or reconcile the conflict, and the record did not allow for a finding of harmlessness. *Id*. at 848. In *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1003-04 (9th Cir. 2015), the Court found an apparent conflict between an RFC limiting a claimant to "1 to 2 step tasks" and jobs requiring a reasoning level two. Again, the ALJ had not recognized or reconciled the conflict. *Id*. at 1004. Nor was the error harmless. The ALJ had not merely restricted the claimant to "'simple'" or "'repetitive'" tasks and had, instead, expressly limited the claimant to "'one to two step tasks'" and there was no explanation as to why that limitation "should not be taken at face value." *Id*. at 1004 & n.6. This Court employs an approach requiring a close reading of the ALJ's RFC assessment in order to determine how it compares to reasoning level requirements. *See*, *e.g.*, *Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1208-10 (W.D. Wash. 2012) (citing and describing cases; finding ability to understand "'simple 1 to 2 step instructions'" and "'perform simple tasks' . . . analogous to reasoning level 1 only.").

The ALJ did not here ask whether the VE's testimony was consistent with the DOT. However, both the ALJ and plaintiff's counsel inquired into how the occupations identified by the VE were consistent with specific RFC limitations. (AR 76-77.) In relation to the challenge raised here, plaintiff's counsel asked: "[C]an you explain how those jobs are also consistent with simple work that involves little or no judgment?" (AR 77.) The VE answered: "Yeah, . . . one of the characteristics I used for selecting them was the DOT classifies these jobs as repetitive . . . and repetitive is defined as only a few number of tasks, simple tasks, that are repeated throughout the work day over and over again, so we have the [specific vocational preparation (SVP)] that suggests it doesn't take long to learn the jobs, and the jobs are simple and there's not much else to them." (AR 77-78.) In the decision, the ALJ acknowledged inconsistencies with the DOT,

1   and stated, in relevant part, that the VE explained the jobs identified involved "unskilled, simple,

2   repetitive tasks, SVP level 2," and noted "the DOT classifies them as 'repetitive' work, defined

3   as simple tasks that are not repeated."   (AR 40.)

4           This case contains an inquiry on the record into consistency between relevant RFC

5   limitations and the jobs identified at step five, and the ALJ's adoption of a reasonable

6   explanation for an apparent inconsistency between the limitations and the reasoning levels of

7   those jobs.  That the VE specifically referred in his testimony to the SVP[4] for the jobs, and not

8   the reasoning levels, does not detract from the fact his testimony provided a reasonable

9   explanation for any inconsistency between the RFC limitations and both the SVP and reasoning

10  levels of the jobs:  " . . . so we have the SVP that suggests it doesn't take long to learn the jobs,

11  *and the jobs are simple and there's not much else to them*."   (AR 78 (emphasis added).)   This

12  case is also distinguishable from cases in which claimants were explicitly limited to performing

13  one- and/or two-step tasks.  *See Rounds*, 807 F.3d at 1004 & n.6 (distinguishing the limitation to

14  "one or two step tasks" as not "merely" a restriction to "'simple'" or "repetitive" tasks and citing

15  cases finding no inconsistency between the latter restrictions and level two reasoning, including,

16  *inter alia*, *Abrew v. Astrue*, No. 07-35243, 2008 U.S. App. LEXIS 27207 at *4-5 (9th Cir. Dec.

17  17, 2008) (no conflict between limitation to simple tasks and reasoning level two work); *Lara v.*

18  *Astrue*, No. 07-55903, 2008 U.S. App. LEXIS 27070 at *2-3 (9th Cir. Nov. 19, 2008) (no

19  conflict between simple, repetitive tasks and reasoning level two work)); *Morgan v. Astrue*, No.

20  11-422, 2011 U.S. Dist. LEXIS 150675 at *17-22 (W.D. Wash. Nov. 28, 2011) ("Importantly,

21         [4] "'SVP' is defined in the DOT as 'the amount of lapsed time required by a typical worker to
22  learn the techniques, acquire the information, and develop the facility needed for average performance in
    a specific job-worker situation.'" *Bray*, 554 F.3d at 1231 n.4 (citing DOT, App. C).  An SVP 2, for
    example, "means 'anything beyond a short demonstration up to and including 1 month[.]'"  *Id*. Also,
23  "'unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and
    skilled work corresponds to an SVP of 5-9 in the DOT.'"  *Id*. (quoting SSR 00-4p).

REPORT AND RECOMMENDATION
PAGE - 11

the ALJ did not limit Ms. Morgan to only one- to two-step tasks [which would] more clearly indicate a limitation to reasoning level 1 jobs[.]"; finding no conflict between moderate limitations in concentration, persistence, and pace and the detailed but uninvolved work required for level 2 reasoning), *adopted by* 2011 U.S. Dist. LEXIS 143389 (Dec. 13, 2011); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (no conflict between a limitation to simple repetitive tasks and reasoning level two work).

Finally, even if the Court did not find the VE's testimony to support a deviation between the RFC and the single reasoning level three job identified at step five, it remains that the testimony does persuasively support any deviation between the RFC and the two reasoning level two jobs.  Considering the reasoning level two jobs alone, there is substantial evidence support for the ALJ's decision at step five.  (*See* AR 40 (identifying 230,000 small products assembler jobs nationally and 2,400 in Washington State and 205,000 inspector/hand packager jobs nationally and 3,800 in Washington State)); and *see, e.g., Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (2,500 jobs in California and 25,000 jobs in several regions of the country constituted significant numbers of jobs to support step five finding); *Meissl*, 403 F. Supp. 2d at 982 & n.1 (approximately 1,700 jobs locally and 38,000 jobs nationally significant).

<u>Medical Opinions</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Contradicted opinions may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoted sources omitted).  Plaintiff argues the ALJ improperly weighed the medical evidence by rejecting opinions from treating physician Dr.

REPORT AND RECOMMENDATION
PAGE - 12

1    Denise Kraft and consultative psychological examiner Dr. Alysa Ruddell, and assigning

2    significant weight to the opinions of non-examining State agency physicians' Drs. Robert

3    Hander, Kent Reade, and Michael Brown.

4    A.    Dr. Denise Kraft

5          Treating physician Dr. Kraft completed a physical functional evaluation of plaintiff in

6    December 2012.  (AR 853-57.)  She assessed moderate to marked interference with the ability  to

7    perform one or more basic work-related activities due to plaintiff's back pain status post surgery,

8    palindromic arthritis, incontinence, fatigue, and depression/anxiety, and opined plaintiff could

9    "maybe" perform sedentary work.  (AR 854-55.)

10         The ALJ gave these opinions little weight except to the extent the assessment of

11   sedentary capacity supported the conclusion plaintiff is capable of at least some work activity

12   and her impairments do not preclude her from working.  (AR 36.)  The ALJ noted the provision

13   of few details of any objective clinical findings supporting the degree of severity opined; the

14   reference to a blank ("not done") range of motion chart as supporting the limitations and

15   restrictions assessed; inconsistency with Dr. Kraft's own contemporaneous chart notes/exam

16   records, as previously described in the decision and which "consistently noted 'overall normal'

17   musculoskeletal and neurologic findings and 'no active' synovitis, joint erythema, or edema, and

18   included the examination notes from the same date of the assessment indicating a normal back

19   exam, musculoskeletal system, and neurological exam (*see* AR 575-77); and Dr. Kraft's apparent

20   reliance on plaintiff's self-report of symptoms/limitations "('sleeps 12 to 16 hours/day'; 'anxiety

21   triggers stress . . . goes to bathroom 3 to 4 times per hours')" (AR 854)).  (AR 36.)

22         In assigning weight to a medical opinion, an ALJ considers, *inter alia*, the amount of

23   relevant evidence presented in support, particularly medical signs and laboratory findings, the

REPORT AND RECOMMENDATION
PAGE - 13

explanation provided, and consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).  "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoted source omitted).  A physician's opinion may also be rejected based on inconsistency with the record, *see id*., and/or discrepancy or contradiction between the opinion and the physician's own notes or observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  *See also Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physician's opinions may be discounted when in the form of a checklist, lacking supportive objective evidence, contradicted by other statements and assessments, and based on a claimant's subjective descriptions of pain); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")

The ALJ in this case properly provided specific and legitimate reasons for rejecting the contradicted opinion evidence from Dr. Kraft.   Contrary to plaintiff's contention, there is no indication the ALJ failed to consider Dr. Kraft's status as a treating physician.  Nor did the ALJ improperly focus on the form completed without consideration of the record as a whole, selectively cite to the record, or otherwise fail to properly consider the medical evidence. Plaintiff further fails to show the ALJ improperly inferred reliance on plaintiff's discredited self-report,[5] misconstrued evidence of inconsistency with the record, erred in considering the opinion plaintiff could "maybe" perform sedentary work, or establish any basis for recontacting Dr. Kraft before rejecting her opinion.   The record, instead, provides ample support for the ALJ's reasoning and the decision itself reveals his careful, reasonable consideration of the record as a

---

[5] Plaintiff does not challenge the ALJ's credibility assessment (*see* AR 30-35).

REPORT AND RECOMMENDATION
PAGE - 14

1    whole.  *See generally Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ may reject

2    physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting

3    clinical evidence, stating his interpretation thereof, and making findings.")

4           Dr. Kraft also completed a mental capacity assessment form in April 2014, assessing,

5    *inter alia*, marked limitations in plaintiff's ability to remember locations and work-like

6    procedures, to carry out detailed instructions, and to respond appropriately to changes in the

7    work setting.  (AR 851-52.) The ALJ assigned these opinions little to no weight based on the

8    lack of supporting medical evidence.  (AR 37.)  He noted the absence of any mental health

9    diagnoses on the form, that the form consisted entirely of functional rating check-blocks without

10   supporting medical evidence or explanation to substantiate the degree of limitations opined, and

11   that medical evidence from Dr. Kraft included examination and chart notes that do not indicate

12   any mental status examinations ("MSE") or discussion of mental impairments/limitations, except

13   for notes indicating plaintiff had depression and was taking medications.  (*Id.* (citing AR 536-52,

14   752-815, 826-30).)

15          Again, plaintiff fails to demonstrate error.  The ALJ provided specific and legitimate

16   reasons for the weight assigned to these opinions.  *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(3)-(4),

17   416.927(c)(3)-(4); *Bayliss*, 427 F.3d at 1216; *Batson*, 359 F.3d at 1195; and *Thomas*, 278 F.3d at

18   957, as described *supra*; and *see Molina*, 674 F.3d at 1111 (an ALJ may reject "check-off

19   reports" that do not contain any explanation of the bases for their conclusions); *cf. Esparza v.

20   Colvin*, No. 13-16522, 2015 U.S. App. LEXIS 20534 at *5-6 (9th Cir. Nov. 25, 2015) ("The

21   treating physician's extensive notes are consistent with the check-box forms and provide the

22   basis for his opinions.")   Plaintiff, moreover, fails to acknowledge the RFC limitations

23   nonetheless accounting for limitations assessed by Dr. Kraft, such as the limitations to simple,

REPORT AND RECOMMENDATION
PAGE - 15

1   routine tasks, following short, simple instructions, work needing little or no judgment, simple

2   duties that can be learned in a brief period of time, a work environment that is predictable, and

3   few work setting changes.  (AR 28.)

4       The ALJ is responsible for resolving conflicts in the medical record, *Carmickle v.*

5   *Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008), and when evidence reasonably supports

6   either confirming or reversing the ALJ's decision, the court may not substitute its judgment for

7   that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Court here finds the

8   ALJ's consideration of the evidence from Dr. Kraft supported by substantial evidence.

9   B.    Dr. Alysa Ruddell

10      Dr. Ruddell, a consultative examiner for the Department of Social and Health Services,

11  completed a psychological evaluation of plaintiff in December 2012.  (AR 454-58.)  She

12  assessed a severe limitation in the ability to learn new tasks and marked limitations in relation to

13  detailed tasks, the ability to adapt to changes in routine work settings, to communicate and

14  perform effectively, maintain appropriate behavior, complete a work day/week without symptom

15  interruptions, and set realistic goals and plan independently.  (AR 456.)  Dr. Ruddell also

16  assessed a Global Assessment of Functioning (GAF) score of 45, describing "serious symptoms"

17  or "any serious impairment in social, occupational, or school functioning." Diagnostic and

18  Statistical Manual of Mental Disorders 34 (4th ed. 2000).

19      The ALJ gave Dr. Ruddell's opinions little to no weight.  While acknowledging objective

20  evidence of mental health conditions and some resulting limitations, the ALJ found Dr.

21  Ruddell's opinions to rely heavily on plaintiff's self-reported symptoms and complaints, which

22  the ALJ did not find entirely credible.  (AR 37.)  He noted Dr. Ruddell's observation:

23  "Information in this evaluation represents client report."  (*Id*.; AR 454 (indicating no records

REPORT AND RECOMMENDATION
PAGE - 16

available for review).)   The ALJ stated that, although there was some testing, Dr. Ruddell indicated plaintiff's "performance raised 'concerns about effort', which further calls into question the overall reliability of the report/opinion."  (AR 37; AR 457.)   He also found the opinion not consistent with those of the State agency psychological consultants, as well as with plaintiff's range of activities, which indicated her mental impairments, "although limiting, would not prevent her from performing simple, routine unskilled work with minimal social interaction." (*Id.*)  He found it clear the GAF score was based on plaintiff's subjective report regarding her impairments and not an objective analysis of her actual functional abilities.  (*Id.* at 37 n.5.)

Plaintiff avers that, because Dr. Ruddell conducted an interview, administered an MSE, and recorded his observations, her opinions were not largely based on plaintiff's self-reports. *See Woodsum v. Astrue*, 711 F. Supp. 2d 1239, 1257 (W.D. Wash. 2010) ("Dr. Wingate did not just consider what plaintiff reported, but also personally observed plaintiff and performed a [MSE] each time as well.")  Plaintiff downplays Dr. Ruddell's concern about effort, stating she did not diagnose malingering and would be professionally prohibited from rendering opinions about mental limitations if she thought effort invalidated the entire MSE and observations.

However, as reflected above, an ALJ may discount a physician's opinions found to be based largely on the discredited subjective complaints of a claimant.  *Tommasetti*, 533 F.3d at 1041.  A claimant's failure to "exert adequate effort during testing[]" is properly considered in support of such a conclusion.  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (despite physician's personal observation of a claimant and review of x-rays and MRI, the ALJ's conclusion the opinion was based primarily on claimant's discredited self-report was supported by, among other things, physician's own observation of failure to exert adequate effort).

The ALJ here accurately noted Dr. Ruddell's statement that information in the evaluation

REPORT AND RECOMMENDATION
PAGE - 17

represented plaintiff's report (AR 454) and that Dr. Ruddell was "concerned about effort[]" in the testing (AR 457).   The ALJ acknowledged the existence of objective evidence and testing, while reasonably concluding the opinions relied more heavily on plaintiff's self-reporting, which the ALJ found not credible and were called into question by Dr. Ruddell's own concerns as to the reliability of testing results.  *Chaudhry*, 688 F.3d at 671.  *Cf.  Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ "offered no basis" for conclusion medical opinions were based more heavily on self-reports).  To the extent plaintiff favors a contrary interpretation of this evidence, she fails to demonstrate the ALJ's interpretation was not rational.  *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

The ALJ also provided two additional, specific and legitimate reasons for his assessment by finding inconsistency with the opinions of the State agency psychological consultants and with plaintiff's range of activities.  *See id.* at 603 (ALJ appropriately considers inconsistencies between physicians' reports), and *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).   Plaintiff criticizes the ALJ's reliance on the opinions of the non-examining physicians, as addressed below, and denies her limited and sporadic daily activities support an ability to perform sustained work functions.  However, she again offers no more than a different interpretation of the evidence. The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164.  Finding the ALJ's interpretation reasonable, the Court finds no error established.

///

REPORT AND RECOMMENDATION
PAGE - 18

C.    Non-examining State Agency Physicians

The ALJ accorded significant weight to Dr. Hander's opinions, finding his assessment supported by objective medical findings and plaintiff's range of activities, and supporting the RFC assessed.  (AR 35-36.)  He found the opinions of Drs. Reade and Brown consistent with plaintiff's performance on consultative psychological evaluation, regular psychiatric screenings, and her range of activities, and supporting the mental RFC assessed.  (AR 36.)

Plaintiff's criticisms of the ALJ's assessment of this opinion evidence do not undermine the substantial evidence support for the ALJ's decision.  The ALJ, for instance, was required to "consider", not explicitly list and discuss, a number of different factors in deciding the weight to afford this evidence, including, but not limited to, the specialization of a physician and the supportability and consistency of the opinions.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Also, while plaintiff denies her daily activities and the objective evidence cited by the ALJ support her ability to perform sustained work activities, she again proffers and relies upon her own interpretation of the evidence, without demonstrating the ALJ's interpretation was not rational.  The ALJ acknowledged plaintiff has "some physical and mental limitations," while reaching the reasonable and well-supported conclusion the record did not support the degree of limitation alleged.  (AR 38.)  Plaintiff fails to demonstrate error in the weight afforded the opinions of the non-examining physicians.  *See generally* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p (State agency consultants are highly qualified and experts in the evaluation of disability claims); and *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.")

REPORT AND RECOMMENDATION
PAGE - 19

## CONCLUSION

This matter should be REMANDED for further administrative proceedings.   Remand should be limited to consideration of plaintiff's status in relation to applicable age categories.

### DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.   Failure to file objections within the specified time may affect your right to appeal.   Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.   Responses to objections may be filed within **fourteen (14) days** after service of objections.   If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 21, 2016**.

DATED this 5th day of October, 2016.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 20